UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 05-10306-RGS
CIVIL ACTION NO. 09-11095-RGS

JAVON BROWN

v.

UNITED STATES OF AMERICA

MEMORANDUM AND ORDER ON
PETITIONER'S MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE

July 15, 2010

STEARNS, D.J.

Javon Brown, a *pro se* litigant, brought this petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Brown argues that: (1) because he did not understand the substance of his guilty plea, it was entered involuntarily; (2) the plea lacked a factual basis; and (3) he received ineffective assistance of counsel. The United States opposes the petition. For the reasons stated, it will be DENIED.

BACKGROUND

In September of 2005, federal investigators obtained a court-approved wiretap authorizing the covert interception of telephone calls among members of a cocaine trafficking organization masterminded by Brandin Gonsalves, a New Bedford, Massachusetts-based cocaine dealer. The interceptions eventually led agents to Brown, a "customer" of Gonsalves and his partner, John Ferreira. In November of 2005, agents seized approximately ten kilograms of Mexican cocaine destined for Gonsalves and Ferreira. Prior to the seizure, agents intercepted coded telephone conversations among

the conspirators planning distribution of the cocaine. Of immediate relevance, on September 30, 2005, at approximately 5:38 p.m., in a call to one of his henchmen, Tyson Depina, Gonsalves told Depina that Ferreira might need his assistance in doing a deal with "V." In an October 10, 2005 call with Ferreira, Gonsalves stated that he "got Von's money, 66." The agents understood the terms "Von's money" and "66" as a reference to $66,000 that had been paid by Brown for three kilograms of cocaine. That understanding was confirmed by an October 24, 2005 telephone call made by Brown from the Ash Street Jail in which he identified himself to Gonsalves as "Von."

On November 9, 2005, a federal grand jury named Brown in an eleven-count indictment in which fifteen defendants were charged. Brown was charged with one count of conspiracy to distribute and to possess with intent to distribute at least five kilograms of cocaine and at least 50 grams of crack cocaine, in violation of 21 U.S.C. § 846.

On September 28, 2007, Brown was sentenced to a four-to-five year term of imprisonment on state firearms charges. The state charges grew out of an investigation by the New Bedford police, who had obtained a search warrant for Brown's apartment and several of his storage units. The search led to the seizure of twelve firearms (three of which had been reported stolen), over 500 rounds of ammunition, and a bulletproof vest.

Brown changed his plea to guilty to the federal conspiracy charge at a hearing held on June 24, 2008. At the hearing, Brown pled guilty to so much of the indictment as charged him with being a member of the conspiracy. In conducting the Rule 11 colloquy, the court explained the nature of the conspiracy charge to Brown.

THE COURT: Essentially, Count One – and putting aside any allegation of

> cocaine base, because you're not pleading to that, it's pure cocaine – charges that you were part of a conspiracy to distribute cocaine.
>
> A "conspiracy" under federal law is, as under state law, an agreement between two or among three or more persons to do something that the law forbids, in this case to distribute a controlled substance, cocaine being a controlled substance.
>
> To prove a conspiracy, the government has to prove an agreement. It doesn't have to prove a contractual agreement, in the sense that there was ever a written understanding of what the agreement was, but it does have to prove a meeting of the minds, that there was a joint coming together with the goal of accomplishing a criminal purpose, and that each member of the conspiracy was a knowing and willing member of the conspiracy and joined the conspiracy with some desire to see the conspiracy succeed.
>
> It's not necessary that every conspirator know the names of every other conspirator or every detail of the conspiracy. But he certainly must be a knowing participant in what he knows is an agreement to break the law.
>
> Do you understand that?
>
> BROWN: Yes.

R11 Tr: 7-8.

The court then explained the rights that Brown was forfeiting by pleading guilty – rights that Brown stated he understood. The court asked the government to summarize the facts of the case, after which the court addressed Brown about his acceptance of responsibility.

> THE COURT: What the government is saying . . . is that you knew that Mr. Gonsalves was involved in a larger conspiracy. Just knowledge that someone else is conspiring with other[s] is, itself, not a crime. But you then agreed with Mr. Gonsalves to buy large quantities of cocaine from him knowing that by being a substantial customer in that sense, you were furthering his larger plan to conduct drug operations.
>
> BROWN: Yes, I understand.

3

R11 Tr: 22.

Finally, the court asked Brown about the representation he had received from his counsel, Mr. Camera.

> THE COURT: Have you had sufficient time to discuss with Mr. Camera the charge in the case, your rights, your possible defenses and the consequences of pleading guilty?
>
> BROWN: Yes, your Honor.
>
> THE COURT: Do you feel he has acted at all times in your best interest?
>
> BROWN: Yes, your Honor.
>
> THE COURT: Mr. Camera, I gather it's your recommendation that I accept the plea?
>
> MR. CAMERA: Yes, your Honor.
>
> THE COURT: Mr. Brown, have I confused you by any question I asked or anything I said?
>
> BROWN: No, your Honor.

R11 Tr: 23

At the conclusion of the hearing, the court made findings that Brown understood the nature of the charge and the penalties that he faced, and that he was offering to plead guilty voluntarily and with full knowledge of the consequences, and after consideration of his own best interests. The court also found that the facts presented by the government, as acknowledged by Brown, were sufficient to warrant a finding of guilt beyond a reasonable doubt.

On October 21, 2008, Brown was sentenced to sixty months, the statutory mandatory-minimum sentence. The sentence, however, was imposed to run concurrently

with Brown's state firearms sentence. The court concurred with Mr. Camera's observation that the Sentencing Guidelines recommended a significantly higher sentence, ordinarily to be served consecutively to any state sentence, and that Brown had been the beneficiary of the government's agreement to recommend a concurrent sentence.

## DISCUSSION

Section 2255 is not a surrogate for direct appeal, but rather provides for post-conviction relief in four limited instances: "if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to direct attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). "The catch-all fourth category includes only assignments of error that reveal 'fundamental defects' which, if uncorrected, will 'result in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" Id., quoting Hill v. United States, 368 U.S. 424, 428 (1962). A cognizable section 2255 claim, unless it is constitutional or jurisdictional in nature, must reveal "exceptional circumstances" compelling redress. David, 134 F.3d at 474. The petitioner bears the burden of demonstrating an entitlement to relief. Mack v. United States, 635 F.2d 20, 26-27 (1st Cir. 1980).

### Involuntary Guilty Plea

Brown first argues that he did not understand the nature of the offense and thought that he was pleading guilty only to purchasing cocaine, and not as a member of a conspiracy. Brown did not seek to withdraw his guilty plea during the four months that

5

elapsed between the plea and sentencing hearings, nor did he challenge the validity of the plea on direct appeal. Instead, he brought this collateral attack.

> It is a bedrock principle that, under ordinary circumstances, the voluntariness of a guilty plea can be questioned on collateral review under 28 U.S.C. § 2255 only if, and to the extent that, the plea has been challenged on direct appeal. Bousley v. United States, 523 U.S. 614, 621 (1998). If a federal habeas petitioner challenges his conviction or sentence on a ground that he did not advance on direct appeal, his claim is deemed procedurally defaulted. Id.

Oakes v. United States, 400 F.3d 92, 95 (1st Cir. 2005). When a defendant has procedurally defaulted by failing to raise a claim on direct review, he may only proceed by way of collateral attack by demonstrating cause for the default and actual prejudice, or that he is actually innocent of the offense. Murray v. Carrier, 477 U.S. 478, 485-486, 496 (1986).

Brown devotes most of his fourteen-page memorandum lamenting his late-blooming awareness that his plea was involuntary. He suggests in passing that he failed to raise the issue on direct appeal because he did not realize that "[his] conduct did not warrant a conspiracy conviction" until after the appeal period expired, leading him to believe that any direct appeal would be futile. Pet'r's Reply at 12. He does not claim any prejudice resulting from the late awakening (beyond the default itself), and therefore has not shown an entitlement to relief under the first exception to the procedural default rule. See Mack, 635 F.2d at 26-27.

Brown offers up the protest that he is "innocent of being involved in the Gonsalves/Ferriera [sic] conspiracy." Pet'r's Reply at 12. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that

no reasonable juror would have convicted him." Bousley, 523 U.S. at 623, quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995) (internal citation and quotation marks omitted). Establishing actual innocence means proving factual innocence, "not mere legal insufficiency." Bousley, 523 U.S. at 623, citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992). "This standard, which requires a stronger showing than that needed to establish prejudice, reserves collateral review for the truly extraordinary case, while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." Santoro v. United States, 187 F.3d 14, 17 (1st Cir. 1999), quoting Schlup, 513 U.S. at 327 (internal citation and quotation marks omitted).

Brown has fallen woefully short of meeting his burden. The record of the plea colloquy does not support the claim that he did not understand the conspiracy charge. Brown affirmed the court's restatement of his involvement in the conspiracy, "that he (Brown) agreed with Mr. Gonsalves to buy large quantities of cocaine from him, knowing that by being a substantial customer in that sense, [he was] furthering [Gonsalves's] larger plan to conduct drug operations." R11 Tr: 22. Nor does Brown offer any evidence of a factual nature supporting his claim of innocence, relying instead on the plea hearing transcript, in which the court specifically found that the government's facts (and theory of the case) were sufficient to warrant a finding of guilt. R11 Tr: 24. Consequently, the default stands. See Murray, 477 U.S. at 485, 496.

No Factual Basis for Plea

Brown next alleges that his plea was without a factual basis, claiming that the evidence presented was insufficient to establish that, through a single purchase of

7

cocaine, he was involved in the Gonsalves/Ferreira conspiracy.[1] Brown contends that the evidence only proves that he purchased cocaine from Ferreira on September 30, 2005. Brown did not present this claim on direct review and has not demonstrated cause and actual prejudice resulting from his failure to do so. See Bousley, 523 U.S. at 622.

Ineffective Assistance of Counsel

Brown levels four claims of ineffective assistance at his attorney, Frank Camera: (1) counsel did not provide a reasonable defense, among other things, by failing to seek to suppress the cocaine; (2) counsel did not fully or clearly explain the meaning of conspiracy, including its elements; (3) counsel did not inform Brown of the entirety of the evidence against him; and (4) counsel labored under a conflict of interest.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." The right to counsel includes the right to effective counsel. See Strickland v. Washington, 466 U.S. 668, 686 (1984). Effective counsel does not mean perfect counsel. "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight." Id. at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id., quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955). "First, a reviewing court must

---

[1] As the court notes at pages 9-10, infra, Brown's factual and legal arguments ignore fundamental principles of the law of conspiracy (that were explained to Brown at the plea hearing).

assess the proficiency of counsel's performance under prevailing professional norms. . . . This evaluation demands a fairly tolerant approach; after all, the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense. . . . The second line of inquiry . . . entails a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) (internal quotation marks omitted) (a showing of actual prejudice is a necessary element in almost all cases involving allegations of attorney error).

To satisfy the first prong of the Strickland test, Brown must prove that his counsel's performance was so inferior as to have been objectively unreasonable. See United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993). Counsel's conduct is considered reasonable if it falls "'within the range of competence demanded of attorneys in criminal cases.'" United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978), quoting McMann v. Richardson, 397 U.S. 759, 770-771 (1970).

To satisfy the second prong of the Strickland test, Brown must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. While Brown does not need to prove that his counsel's deficient conduct more likely than not altered the outcome, he must show that his counsel's errors "had some conceivable effect on the outcome of the proceeding." Id. at 693. See also Dugas v. Coplan, 506 F.3d 1, 9 (1st Cir. 2007). Brown's ineffective assistance claims are supported only by vague references to filings and evidence, and are directly contradicted by the Rule 11 hearing transcript.

9

A. <u>Failure to Provide a Reasonable Defense</u>

Brown claims that Camera failed to provide a reasonable defense. He argues *inter alia* that Camera should have conceded his role as a co-conspirator and defended him as such because the evidence "was against [the co-defendants] and not [Brown]." Pet'r's Reply at 10. Brown's argument is based on a fundamental mistake of law, that is, that a defendant's "slight" connection to other conspirators is a legal defense to the crime of conspiracy. See <u>United States v. Brandon</u>, 17 F.3d 409, 428 (1st Cir. 1994) ("Once a conspiracy is established, as well as defendant's intent to further it, any connection between the defendant and the conspiracy, even a slight one, will be sufficient to establish knowing participation.").[2]

B. <u>Failure to Explain Conspiracy and Its Elements</u>

Brown next contends that Camera did not clearly explain the meaning of conspiracy, claiming that he would not have pled guilty had Camera fully explained the elements of the crime. This contention is contradicted by the transcript of Brown's Rule 11 hearing.

> THE COURT: I know that he is very thorough but, for the record, has Mr. Camera, discussed the indictment with you?
>
> BROWN: Yes.
>
> THE COURT: Has he explained to you what lawyers could call the "elements" of this offense; that is, the essential components that the government would have to prove beyond a reasonable doubt if, in fact, it

---

[2]Although Camera did join in a motion challenging the truthfulness of the search warrant affiant, the suggestion that he should have gone further by seeking to suppress the cocaine is based on a fundamental misunderstanding of the law of standing, a predicate for filing a motion to suppress that Brown could not satisfy. See <u>Rakas v. Illinois</u>, 439 U.S. 128, 138-139 (1978); <u>United States v. Padilla</u>, 508 U.S. 77, 82 (1993) (per curiam).

were able to satisfy a jury that you were guilty of this crime?

BROWN:  Yes, your Honor.

R11 Tr: 6-7.

The court then defined the legal meaning of the term "conspiracy," as well as the burden of proof.  Although Brown expressed confusion at one point during the hearing about the charge (after the prosecution's presentation of the facts), the court rephrased the issue to ensure that Brown understood that he was pleading guilty to "agree[ing] with Mr. Gonsalves to buy large quantities of cocaine from him, knowing that by being a substantial customer in that sense, [he] was furthering [Gonsalves's] larger plan to conduct drug operations."  R11 Tr: 22.

### C. <u>Failure to Inform Brown of All Inculpatory Evidence</u>

Brown also alleges that Camera did not inform him of all of the evidence against him, specifically the incriminating contents of the drug ledgers kept by Gonsalves at his residence.  Brown claims that he first learned of the ledgers in the pre-sentence report.  This allegation is inconsistent with the transcript of Brown's Rule 11 hearing, during which the government in reciting the evidence that would be introduced if the case were to proceed to trial, specifically referred to the existence of the "drug ledgers."  R11 Tr: 18.  Moreover, the court cannot think of a reason why even more incriminating evidence would have made Brown less, rather than more, inclined to plead guilty.

### D. <u>Conflict of Interest</u>

In his fourth ineffective counsel claim, Brown alleges that Camera refused to ask the United States Attorney to dismiss the charge against him in exchange for his

cooperation, which would have included his revealing "who actually purchased the drugs." Pet'r's Reply at 11-12. Brown claims that Camera refused to pursue a cooperation agreement because the persons Brown would have implicated were "potential clients." Id. at 12.

The constitutional right to counsel carries with it a correlative right to representation free from any conflict of interest. See Cuyler v. Sullivan, 446 U.S. 335, 346 (1980); Strickland, 466 U.S. at 688. A defendant cannot rely on a presumption of prejudice but "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler, 446 U.S. at 348. For Sixth Amendment purposes, an "actual" conflict of interest is a conflict that adversely affects counsel's performance, "as opposed to a mere theoretical division of loyalties." Mickens v. Taylor, 535 U.S. 162, 171 (2002). An actual conflict of interest arises when an attorney subordinates his duty to his client to other interests or loyalties and "pulls his punches" as a result. See United States v. Soldevila-Lopez, 17 F.3d 480, 486 (1st Cir. 1994). "[I]n order to show an actual conflict of interest, a defendant must show that (1) the lawyer could have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties." Id.

Brown does not offer any evidence of an actual conflict on Camera's part, only speculation that Camera's refusal to pursue a cooperation agreement "*may* have been a factor in how [he] was defended." Pet'r's Reply at 12 (emphasis added). Although Brown claims that one of the persons he would have implicated is now Camera's client, Brown is

12

the only defendant who Camera represented in this case. There is no allegation that Camera undertook any dealings on behalf of any of Brown's co-defendants at any time during the prosecution.

More to the point, Camera successfully negotiated a plea agreement on Brown's behalf, pursuant to which Brown took responsibility for only three kilograms of cocaine (the cocaine he directly purchased) rather than the ten kilograms attributed to the conspiracy as a whole. Additionally, he secured a government recommendation that the statutory mandatory minimum federal sentence (60 months) be served concurrently with Brown's state sentence. As the court noted at the sentencing hearing, Camera got Brown "a very good result, the best result . . . under the circumstances." Sent. Hrg. Tr: 20.

## ORDER

For the foregoing reasons, Brown's motion to vacate his sentence is <u>DENIED</u>. The petition is <u>DISMISSED</u> with prejudice. The Clerk may now close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE